A02A1332. USHER v. THE STATE.
(574 SE2d 580)

BARNES, Judge.

Following a jury trial, Olin Usher, Jr. was convicted of two counts of armed robbery, possession of a firearm during the commission of a felony, and violation of the Georgia Controlled Substances Act. Usher filed a motion for new trial, which the trial court denied, and he now appeals. In two enumerations of error, Usher challenges the effectiveness of trial counsel and the jury array. For the reasons below, we affirm.

"On appeal from a criminal conviction, the evidence must be con-

strued in the light most favorable to the verdict, and [Usher] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Eason v. State*, 234 Ga. App. 595, 596 (1) (507 SE2d 175) (1998). So construed, the evidence shows that Usher, his nephew, Leonard Carr, and a female acquaintance, Kimberly Matthews, were riding around together on November 4, 1999. Matthews testified that Usher was driving, she was in the front passenger seat, and Carr was in the backseat. At some point during the day, they visited a motel, smoked crack cocaine, and engaged in sexual intercourse. After leaving the motel, the group visited a pawnshop and then an undisclosed location to purchase more crack cocaine.

At some point, the group drove toward Conyers where they approached Larry Partain and Lamar Dawson, who were standing outside their vehicles at a Winn Dixie parking lot. Usher was still driving, Matthews was in the front passenger seat, and Carr was in the backseat. Usher asked Partain for directions to Christian Circle, and after Partain gave him the requested directions, pulled away, but stopped and drove back. Partain testified that Usher opened the car door and asked him to clarify, and when he did, Usher pulled out a small revolver and robbed Partain of his money, wallet, watch, and wedding band. Carr, who was in the backseat, pointed a gun at Dawson and took $3, his wallet, and his cell phone. Partain testified that he saw the vehicle turn in the direction of Christian Circle. When the police responded, Partain gave them a description of the car and its occupants. An officer spotted a vehicle matching the description, but when the officer attempted to stop the car, a chase ensued. The chase ended when the car pulled into a driveway, at which time the occupants jumped out and ran into a wooded area behind a subdivision. Usher and Matthews were apprehended in the wooded area and arrested. Usher was wearing Partain's watch when he was captured.

Usher denied robbing the victims, insisting that he did not know Matthews or Carr. He testified that he was visiting his cousins and had hitched a ride with the couple. He also testified that the driver of the car gave him the watch he was wearing.

1. Usher argues that the trial court erred in denying his motion for new trial because his counsel was ineffective. We find no merit in this contention.

Under *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984), a defendant claiming ineffective assistance of counsel must establish both that counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that, but for counsel's deficiency, the result of the trial would have been different. *Williams v. State*, 258 Ga. 281, 286 (7) (368 SE2d 742) (1988). Because the defendant must overcome the strong presumption that trial counsel's conduct fell within the broad

parameters of reasonable professional conduct, the defendant's burden under the first prong of this test is heavy. *Turner v. State*, 273 Ga. 340, 342 (2) (541 SE2d 641) (2001). We further note that failure to satisfy either prong of the *Strickland* standard is fatal to an ineffectiveness claim, and a trial court's finding that the defendant was afforded effective assistance of counsel must be upheld unless it is clearly erroneous. *Manning v. State*, 250 Ga. App. 187, 191-192 (4) (550 SE2d 762) (2001).

(a) Without authority or argument for his contention, Usher first complains that trial counsel was ineffective for failing to object when a State's witness was allowed to rehabilitate his testimony with a report the witness had given earlier.

The officer who apprehended Usher was asked if Usher was wearing a shirt when he was apprehended, to which he replied, "I believe he had on a t-shirt, but I'm not positive of that." The State then asked if it would help the officer remember if he looked at the report he had prepared. The officer looked at the report and recalled that Usher was not wearing a shirt when he was apprehended.

The facts belie Usher's assertion that the officer was allowed to rehabilitate his testimony. A witness is "rehabilitated" after his credibility has been challenged on cross-examination or by another witness. See *Evans v. State*, 253 Ga. App. 71, 74 (1) (558 SE2d 51) (2001). Pursuant to OCGA § 24-9-69, a witness is allowed to "refresh and assist his memory by the use of any written instrument or memorandum," which were the circumstances here.

(b) Again without offering argument or authority for his assertion, Usher contends that trial counsel was ineffective for failing to object to testimony that upon his arrest, Usher told the officer to "get the f—k away from him." He argues that while trial counsel objected on relevance grounds, he should have objected on the grounds that the State had failed to disclose the statement during discovery.

While OCGA § 17-16-4 (a) (1) requires the State to disclose any "relevant . . . oral statement made by the defendant while in custody, whether or not in response to interrogation," no later than ten days prior to trial, Usher neither asserts nor demonstrates that he was in custody or being interrogated when he made the statement. In fact, our review of the record shows that when the statement was made, Usher was attempting to elude arrest. Therefore, the State was not required to disclose the statement to Usher before trial. *Hudgins v. State*, 186 Ga. App. 883, 884 (2) (369 SE2d 54) (1988).

(c) Usher next argues that trial counsel was ineffective for failing to object to an officer's hearsay statement that after Matthews was captured, she told him that Usher and Carr were running in a certain direction.

At the motion for new trial hearing, trial counsel testified that

he did not object to the hearsay testimony by the officer because, "the statement wasn't disputed by [the] client," "it really wasn't a material point to whether he was guilty or not," and "[Usher] took the stand later and admitted he had fled." Whether to interpose a particular objection is a question of trial tactics and strategy and failure to object "usually provide[s] no basis per se for a reversal of appellant's conviction." (Citations and punctuation omitted.) *Herndon v. State,* 235 Ga. App. 258, 259 (509 SE2d 142) (1998). Here, given the fact that Usher took the stand and admitted that he fled when approached by the police, the statement was not relevant to his guilt. And, accordingly, the trial court did not err in finding that Usher did not meet his burden of showing deficient performance.

(d) Usher also contends that trial counsel's performance was deficient because counsel failed to object to the admission of certain personal items belonging to him. He argues that a "do-rag" found among his personal effects was admitted without proper foundation testimony, and that a bag of personal items, including a pawn ticket, was admitted despite a break in the chain of custody and without proper foundation.

At trial, an officer who collected evidence at the crime scene offered the following testimony, "these are the gloves and a dude rag that was turned over to me that was collected at the original — excuse me — at the scene I believe in the creek because these were muddy and had to be dried." Partain testified that the man who robbed him was wearing a stocking or scarf on his head. Thus the "do-rag" was "sufficiently identified and related to the alleged crime to authorize [its] admission," and trial counsel was not deficient in failing to object to its admission. *Gardiner v. State,* 252 Ga. 422, 424 (3) (314 SE2d 202) (1984).

Likewise, trial counsel's performance was not deficient for failing to object to the admission of items recovered from Usher's person at the time of his arrest. The items included Usher's wallet and a pawn ticket. Although Usher agues that the chain of custody was broken, "items of evidence which are distinct and recognizable physical objects, such that they can be identified by the sense of observation, . . . are admissible in evidence without the necessity for showing a chain of custody." (Citations omitted.) *Harper v. State,* 251 Ga. 183, 185 (1) (304 SE2d 693) (1983).

(e) During the direct examination of the investigator who displayed the photo lineup to Partain, the State asked, referring to the positive identification of Usher, "did [Partain] tell you how positive he was as to his identification of that photograph?" The investigator responded, "[Y]es. He was positive it was the person who robbed him." Usher complains that trial counsel was ineffective because he did not object on the basis of hearsay or improper bolstering.

In this circumstance, the investigator's testimony did not reflect his personal belief as to the veracity of the witness and does not constitute improper bolstering. Compare *Bolden v. State*, 272 Ga. 1 (525 SE2d 690) (2000). While the testimony may have been hearsay, Partain testified at trial and verified that he positively identified Usher as the man who robbed him. "The erroneous admission of hearsay is harmless where . . . legally admissible evidence of the same fact is introduced." *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999).

(f) Usher complains that trial counsel did not object to certain testimony from the officer who interviewed Matthews. The following testimony occurred on redirect by the State regarding Matthews' identification of the other occupant of the car, Carr:

Q. What did Kimberly Matthews do in terms of once she looked at that photographic lineup? You were there, were you not?
A. I was there. She was looking at Photograph No. 4, and then she said it was No. 6 she thought.
Q. Okay. And did you have an impression in terms of her behavior at the time of that photographic lineup?
A. I did.
Q. And which was?
A. I thought she was trying to deceive me as to who the person was in the lineup.

At the motion for new trial hearing, trial counsel testified that, while he could have objected to the testimony, he did not object because the officer responded regarding his own thoughts, rather than what Matthews was thinking.

Pretermitting whether the officer's testimony was impermissible, it is doubtful that this testimony, which was related to Matthews' identification of Carr, affected the verdict because Matthews consistently identified Usher. Accordingly, any error was harmless because no reasonable probability exists that, but for trial counsel's deficiency, the result of the trial would have been different. *Williams v. State*, supra, 258 Ga. at 286.

(g) Finally, Usher argues that trial counsel did not "vigorously cross-examine" Matthews. He argues that, while Matthews testified at trial that the group stopped at a pawnshop when they left the motel, her pretrial statement never mentioned a stop. Presumably, because he has not specified the portion of the record containing this statement, Usher is referring to the videotaped statement given by Matthews. At the new trial hearing, trial counsel testified that he listened to the videotaped statement many times and made extensive

notes. He also testified that if there was an inconsistency in her statement and testimony about the stops they made before the robbery, it was not, in his opinion, material.

As the State points out, the police discovered a pawn ticket in Usher's personal belongings when he was arrested. Even if Matthews were impeached with the inconsistencies in her statement and testimony regarding the stop at the pawnshop, the pawn ticket placed Usher at the pawnshop and completely contradicts Usher's alibi testimony about what he did that day, thereby lending no support to his defense. Accordingly, Usher has not shown that trial counsel performed deficiently in cross-examining Matthews or that the cross-examination prejudiced his defense.

Even if Usher shows error, he must show a reasonable probability that the error affected the outcome of the trial. *Herndon,* supra, 235 Ga. App. at 259-260. The evidence of Usher's guilt was overwhelming. It included, among other things, positive identification by one of the victims and the co-defendant Matthews, testimony from Carr's girlfriend that she knew Usher, as well as the discovery of the victim's stolen watch on Usher's person. Usher therefore has failed to demonstrate that counsel's failure in the illustrated circumstances, even if ineffective, changed the outcome of his trial.

2. Usher also challenges the trial jury array. He argues that, while the array represented a fair cross-section of the racial composition of the community in 1990, it did not fairly represent the community's racial composition in 2000.

"Under Georgia law, a criminal defendant must raise a challenge to the jury array at or before the time . . . that the jury array is seated and voir dire commences." (Citations and punctuation omitted.) *Guest v. State,* 186 Ga. App. 318 (1) (367 SE2d 105) (1988). And the challenge must be in writing. OCGA § 15-12-162. Here, the challenge came after the jury panel was sworn in, and it was not in writing.

Even if this argument was properly preserved, it is meritless. At the motion for new trial hearing, held November 6, 2001, the foreperson of the jury commission testified that the traverse lists from which the juries are impaneled are compiled by the Administrative Offices of the Court using current census data, which in Usher's case was the 1990 Census. She testified that, while the commission was currently revising the traverse boxes based on population data from the 2000 Census, the information was not available at the time of Usher's hearing which was held in October 2000. The traverse jury box from which Usher's jury was drawn was compiled on March 18, 1999. Our Supreme Court has held that if a grand jury challenge is made prior to the release of new census data, the validity of its composition shall be determined by reference to the available official decennial census,

which was, in this case, 1990. *Walraven v. State*, 250 Ga. 401, 405 (1) (297 SE2d 278) (1982). Further, in *Morrow v. State*, 272 Ga. 691 (1) (532 SE2d 78) (2000), the Court upheld the use of the most current census in a challenge to the traverse jury list, when there was no other reliable data available. See also *Smith v. State*, 275 Ga. 715 (571 SE2d 740) (2002).

Thus, the trial court did not err in denying Usher's motion to strike the jury pool.

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 19, 2002.

*Martin & McGuire, John J. Martin, Jr.*, for appellant.
*Richard R. Read, District Attorney, Robert W. Houman, Roberta A. Earnhardt, Assistant District Attorneys*, for appellee.