## S10A0739. GUZMAN v. THE STATE.
(700 SE2d 340)

BENHAM, Justice.

In March 2008, appellant Freddie Gonzales Guzman was found guilty of the December 2006 malice murder of Juan Carlos Rangel Gayoso and was sentenced to life imprisonment.[1] In his appeal, he contests the sufficiency of the evidence, the admission of evidence of his membership in a gang, the denial of his challenge to the array, and the denial of his objection to the State's use of its peremptory

---

[1] The victim was killed on December 22, 2006, and appellant was arrested several days later in Plano, Texas. On November 21, 2007, the Clayton County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder (aggravated assault); two counts of aggravated assault (assault with a deadly weapon and assault with intent to murder), and committing a terroristic act (firing a gun into an occupied vehicle). Appellant's trial commenced on March 24, 2008 and concluded on March 27, 2008, with the jury's return of guilty verdicts on all counts. The trial court sentenced appellant to life imprisonment on April 2, 2008, on the malice murder conviction with the felony murder conviction vacated by operation of law and the remaining convictions merging into the malice murder conviction. Appellant's motion for new trial, filed on April 18, 2008, and amended on October 6, 2008, was heard on February 3, 2009, and was denied by written order filed on March 9, 2009. The notice of appeal was filed on April 7, 2009, and the appeal was docketed to the April 2010 term of this Court. It was submitted for decision on the briefs.

challenges to remove African-American venire members from the jury panel. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). After reviewing the appellate record in light of appellant's contentions, we affirm the judgment of conviction.

1. Appellant contends the evidence presented by the State was insufficient because the testimony of his co-indictee connecting appellant to the crime was uncorroborated.

> To sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty . . . . [Cits.] The necessary corroborating evidence may be circumstantial and it may be slight. [Cits.] The sufficiency of any corroborating evidence is for the trier of fact to decide.

*Matthews v. State*, 284 Ga. 819 (1) (672 SE2d 633) (2009).

The State presented evidence that the victim died as a result of a gunshot fired from a 9-mm. semi-automatic pistol that was recovered from the backyard of appellant's co-indictee. The bullet entered the victim's left shoulder, passed through his lungs and aorta before exiting the body near the victim's right armpit. A motorist passing by testified he saw two vehicles traveling in the same direction, with the passenger side of a gold GMC Yukon vehicle alongside the driver's side of the victim's vehicle. The motorist saw "flame" coming out of a window on the passenger side of the Yukon at the same time he heard three or four shots being fired. The motorist followed the Yukon and reported the vehicle's license tag number to police.

The owner of the vehicle told police her 16-year-old son was driving the vehicle the night the victim was killed. Her son, who was indicted with appellant for the crimes,[2] testified that he met several acquaintances, one of whom was appellant, at a party where they asked him to take them to a place where they could obtain illegal drugs. He drove them to a nearby service station where appellant and several of the other passengers met the victim while the co-indictee was putting fuel in the vehicle. The co-indictee described appellant and the victim as making aggressive gestures at each other. The victim drove away in his vehicle and appellant told his co-indictee to follow the victim's vehicle and to pull alongside it. The

---

[2] The charges against the co-indictee were dismissed.

co-indictee testified that appellant was sitting in the rear passenger side seat of the vehicle driven by the co-indictee and that appellant stuck a gun out the rear passenger window and fired shots into the victim's vehicle. The co-indictee then drove his passengers to their respective homes. Appellant gave his gun and gloves to the co-indictee, who hid the gun in the backyard of his home. The co-indictee admitted he initially lied to police about the circumstances surrounding the death of the victim. The co-indictee's mother testified that, after her son was arrested, she received a telephone call from an acquaintance of both appellant and the co-indictee who told her that appellant had instructed him to tell the co-indictee that he could tell the truth because appellant was in Mexico. The telephone caller testified that appellant had called him with instructions to tell the co-indictee he could tell the truth, and he had given the message to the co-indictee's mother. Appellant was arrested in Plano, Texas, several days after the victim was killed.

Fragments of the bullet's jacket were recovered from the body during the autopsy and were established by expert testimony to have been fired by the gun recovered from the backyard of appellant's co-indictee. Scratches surrounding the entry wound were consistent with the bullet having passed through glass before striking the victim, the window of the driver's door of the victim's vehicle was shattered, and shards of glass were found on the roadway near 9-mm. shell casings on the roadway, corroborating the co-indictee's testimony that the victim was shot through the driver's window while driving a vehicle on a Clayton County road. The testimony of the uninvolved motorist corroborated the co-indictee's testimony that the shots were fired from the passenger side of the Yukon while it was alongside the victim's vehicle. The State introduced into evidence photographs made from a videotape recorded by a security camera at the gas station of the encounter between appellant and the victim, and they depict the victim and appellant and the other passengers with him exchanging "aggressive gestures," corroborating the testimony of the co-indictee. One of the persons with appellant during the verbal exchange with the victim testified that the victim angered appellant by insulting them, that appellant wanted to fight the victim, and that the witness had seen a gun in the waistband of appellant's pants at the party they had left in order to go to the service station, corroborating the co-indictee's testimony that appellant was armed with a gun.

Appellant's assertion that the co-indictee's testimony was uncorroborated is not borne out by the trial transcript. The evidence summarized above was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61

LE2d 560) (1979); *Matthews v. State*, supra, 284 Ga. 819 (1).

2. After the State used six of its seven peremptory strikes to remove African-Americans from the venire, defense counsel challenged the State's motive in so doing. See *Batson v. Kentucky*, supra, 476 U. S. 79. The trial court found the State's reasons for the exercise of its challenges to be race-neutral and ruled that appellant had failed to carry his burden of showing that the State had been motivated by discriminatory intent in the exercise of its strikes. Appellant asserts on appeal that the State's race-neutral reasons for striking two members of the venire were insufficient. After reviewing the transcript, we conclude the trial court did not err.

The State explained it had struck one of the venire members because she had had "a negative experience" with law enforcement, had expressed a belief that something was wrong with the criminal justice system, and had nodded in apparent agreement with another venire member's philosophical statements about law enforcement with which the assistant district attorney was uncomfortable. A venire member's prior negative experience with law enforcement officers is a race-neutral reason supporting the exercise of a peremptory challenge. *Crowder v. State*, 268 Ga. 517 (4) (491 SE2d 323) (1997). The other challenged peremptory strike was exercised against a man who appeared to the assistant district attorney to be nonchalant and uninterested in the proceedings and who had a prior offense (breaking and entering) in North Carolina. A juror's prior conviction or involvement in criminal activity is a race-neutral reason for the exercise of a peremptory strike. *Williams v. State*, 271 Ga. 323 (2), n. 3 (519 SE2d 232) (1999). Since appellant failed to carry his burden of proving purposeful discrimination in the State's exercise of its peremptory challenges, the trial court did not err in denying appellant's *Batson* motion. *Flanders v. State*, 279 Ga. 35 (2) (609 SE2d 346) (2005).

3. After the jury was selected, defense counsel made an oral objection to the array of the jury, "if this is the proper time . . . [,]" to which the trial court responded it was not the proper time. After the *Batson* motions made by the State and appellant were resolved, defense counsel voiced an oral challenge to the array, contending that while ten percent of Clayton County's registered voters were of Latin descent, only one member of the jury panel put upon appellant was Latino. The assistant district attorney asserted appellant's challenge was untimely since it was made after the jury had been selected. The trial court reserved ruling until the following morning, at which time defense counsel presented its challenge to the array in writing. The trial court denied the challenge as untimely because it was not made until voir dire had been completed. Appellant takes issue with the ruling.

> The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not to be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed.

OCGA § 15-12-162. "[A]ny challenge to the composition of a panel of traverse jurors must be made when the panel is first put upon the accused, or there shall be a waiver of the right to contest its composition." *Holsey v. State*, 235 Ga. 270 (2) (219 SE2d 374) (1975). "[A] jury is 'put upon' a defendant at the time that the jury array is seated and voir dire commences." *Guest v. State*, 186 Ga. App. 318 (1) (367 SE2d 105) (1988), quoting *Spencer v. Kemp*, 781 F2d 1458, 1463 (11th Cir. 1986). "[I]n the absence of a timely trial court directive to the contrary, a challenge to the traverse jury array is timely filed any time before the voir dire begins." *Isaacs v. State*, 259 Ga. 717 (3) (a) (386 SE2d 316) (1989). There being nothing in the record reflecting a timely trial court directive to the contrary, appellant's two oral challenges and his written challenge, all made after the jury was selected, were untimely and therefore may not be considered on appeal. *Usher v. State*, 258 Ga. App. 459 (2) (574 SE2d 580) (2002) (oral challenge made after jury selection was untimely); *Huff v. State*, 239 Ga. App. 83 (4) (519 SE2d 263) (1999) (written challenge made after voir dire completed was untimely). See also *Anthony v. State*, 213 Ga. App. 303, 304-305 (444 SE2d 393) (1994) (where panel of traverse jurors was not "put upon" the defendant at one time, having been divided into two groups which were presented to and questioned by counsel sequentially, the defendant was excused from voicing his challenge when the first grouping of the panel was put upon him). The trial court did not err when it denied the challenge as untimely.

4. Appellant next takes issue with the trial court's decision to allow the State to present evidence of appellant's motive in killing the victim through testimony that appellant was the leader of a gang. The State presented evidence that appellant, the co-indictee, and at least one other witness were members of the same gang and that the victim insulted their gang membership, thereby angering appellant, who ordered the co-indictee/driver to follow the victim's vehicle and to drive alongside it so that appellant's side of the Yukon was close to the victim's vehicle. The record having established a connection between appellant's affiliation with a gang and the shooting of the victim, there was no error in admitting evidence of appellant's gang membership. *Mallory v. State*, 271 Ga. 150 (6) (517 SE2d 780) (1999). Relevant and material evidence as to motive does not become

inadmissible because it incidentally may put the defendant's character in evidence. *Wornum v. State*, 285 Ga. 168 (2) (674 SE2d 876) (2009); *Clark v. State*, 271 Ga. 6 (4) (515 SE2d 155) (1999). While appellant's role as acknowledged leader of the gang was disputed, evidence that the co-indictee did as appellant instructed supported the co-indictee's testimony that appellant was the leader. The trial court did not err when it admitted the evidence of gang affiliation and did not err when it denied appellant's motion for mistrial at the close of the State's evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 20, 2010.

*Cerille B. Nassau*, for appellant.

*Tracy Graham-Lawson, District Attorney, Dawn M. Belisle-Skinner, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.