## A11A0082. WASHINGTON v. THE STATE.
## A11A0083. HURST v. THE STATE.
### (714 SE2d 364)

PHIPPS, Presiding Judge.

Kenneth Washington and Kendrick Hurst were tried jointly and both were convicted of robbery,[1] kidnapping,[2] aggravated assault,[3] and possession of marijuana with intent to distribute.[4] In Case No. A11A0082, we find no merit in Washington's claims that the state violated *Batson v. Kentucky*[5] during jury selection; that the court erred in admitting as substantive evidence a written statement from the victim; and that the court improperly charged the jury. In Case No. A11A0083, we find no merit in Hurst's claims that the state violated *Batson v. Kentucky*[6] and that the evidence was insufficient to support the verdicts. In both cases, however, the court erred, as Washington claims, in failing to merge the aggravated assault conviction into the robbery conviction; accordingly, we affirm in part and vacate in part, and we remand the cases for resentencing.

The events at issue occurred on the night of July 27, 2007. The robbery victim, Michael Chitwood, testified that he saw a gold SUV with two occupants pull into the parking lot of a store. He had seen the passenger there before. He approached the SUV and began to talk to the passenger about purchasing some marijuana; he then got into the back seat of the SUV and took approximately $460 from his wallet. At that point, the driver of the SUV pointed a gun at

---

[22] See *Ford v. State*, 281 Ga. App. 114, 116 (2) (635 SE2d 391) (2006).

[1] OCGA § 16-8-40.

[2] OCGA § 16-5-40.

[3] OCGA § 16-5-21.

[4] OCGA § 16-13-30 (j).

[5] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[6] Id.

Chitwood and demanded his money. Although he was afraid, Chitwood refused to hand over the money.

The driver then instructed the passenger to lock the doors and close the windows of the SUV. Chitwood yelled for help and tried to prevent the window from closing. The passenger put his arm around Chitwood's neck and held him in a choke hold, and the driver drove out of the parking lot. The passenger and Chitwood struggled, and Chitwood pushed his feet against one of the SUV's doors. The passenger then obtained the gun, placed it against Chitwood's head, asked him whether he wanted to die, and demanded the money.

Chitwood lost his cell phone during the struggle. He also briefly lost consciousness, at which point he dropped the money that he had been holding in his hand. When he regained consciousness, the men in the SUV ordered him out of the vehicle, and he complied. As the SUV was being driven away, Chitwood memorized its license tag number, which he provided to the police shortly thereafter. He later was shown a photographic array, from which he identified Hurst as the passenger in the SUV. At trial, he again identified Hurst as the passenger.

A police investigator testified that police found, parked on the side of a nearby road, an unoccupied vehicle that matched the SUV's description (including the license tag number). This led the investigator to interview Washington, who admitted the SUV belonged to him and consented to its search. Therein, the investigator found Chitwood's cell phone, and another officer found on the back seat a small baggie of a substance later determined to be marijuana. The investigator testified that there were fingerprints and palm prints on the window of one of the rear doors and a footprint on that door.

The investigator testified that, in his interview, Washington stated that he had driven to the store with a passenger to sell drugs, that Chitwood had gotten into the SUV, and that a fight had erupted between Chitwood and the passenger over the marijuana sale. Washington further stated that he got scared and drove to a convenience store, that the fight concluded, and that he and the passenger then left Chitwood at the convenience store. He denied that a gun was involved. Washington's girlfriend testified to telling the police investigator that, on the evening of July 27, she had seen Washington leave with someone named Kendrick.

### Case No. A11A0082

1. Washington argues that the trial court erred in denying his *Batson* challenge to several of the state's peremptory jury strikes.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must

make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.[7]

The trial court's findings are entitled to great deference, and should not be disturbed unless clearly erroneous.[8]

The court found that Washington had made a prima facie showing of racial discrimination because the state had used some of its peremptory strikes to eliminate seven out of ten African-American prospective jurors. The state offered explanations for the strikes. The prosecutor explained that she struck the first prospective juror because he was close in age to the defendants and did not have a stable work history. She struck the second prospective juror because she had a criminal history, had been involved in a dispute involving allegations of fraud, and knew the public defender. She struck the third prospective juror because he had a criminal history, knew the state's investigator, and was related to someone who, in the prosecutor's opinion, was not an "upstanding citizen." She struck the fourth prospective juror because she had a criminal history and had fewer ties to the community due to working outside the county. She struck the fifth prospective juror because he had a criminal history, his wife was a social worker, he had previously been stricken from jury panels, and he was distantly related to one of the defendants and had remarked that he "didn't have to say anything" about this relationship. She struck the sixth prospective juror because she had a criminal history, had the same address as another person with a criminal history, and appeared disinterested during jury selection. She struck the seventh prospective juror because he had a criminal conviction, had the same address as a "druggie," and his employment status was unclear.

"Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race[-]neutral."[9] As a discriminatory intent was not inherent in the explanations offered by the state for its peremptory strikes, we do not find that the court clearly erred in concluding that those explanations were race-neutral.[10]

---

[7] *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005) (citation omitted).

[8] *Jackson v. State*, 265 Ga. 897, 900 (2) (463 SE2d 699) (1995).

[9] Id. at 898 (2) (citation and punctuation omitted).

[10] See, e.g., *Guzman v. State*, 287 Ga. 759, 762 (2) (700 SE2d 340) (2010) (regarding prior conviction or involvement in criminal activity); *Roberts v. State*, 282 Ga. 548, 550 (5) (651 SE2d 689) (2007) (regarding unemployment); *Trigger v. State*, 275 Ga. 512, 514 (3) (570 SE2d 323)

Moreover, we find no clear abuse of discretion in the court's conclusion that Washington failed to prove discriminatory intent. The record on voir dire does not support Washington's contention that the state's proffered explanations for the strikes lacked a factual basis. And although Washington argues that the state should have more fully developed the record during voir dire to support the explanations, it is clear under Georgia law that Washington, as the opponent of the strikes, bore the burden of demonstrating to the trial court that an improper discriminatory motive underlay the exercise of the strikes, and of making a record to support his contentions in that regard.[11]

Washington argues that the state had a discriminatory motive because it did not strike two similarly-situated white prospective jurors — one who was unemployed and the other who had a prior conviction. But where, as here, the state provides multiple reasons for striking a prospective juror, "it cannot be presumed that a reason applied to one juror, of one race, but not applied to another juror, of another race, is racially motivated."[12] Moreover, the prosecutor argued, and the court agreed, that the white prospective jurors were in fact not similarly situated, on account of other information that those prospective jurors provided during voir dire. The unemployed white prospective juror, after stating that he was not working, stated that he had an ongoing health condition. The other white prospective juror's criminal history was not revealed during his recorded voir dire. That prospective juror, however, asked to approach the bench to discuss a response to a different question, and an unrecorded bench conference occurred. Subsequently, during the arguments on the *Batson* motion, the prosecutor referred to information apparently

---

(2002) (regarding prospective juror's inattentiveness and disinterest in process); *Lyons v. State*, 271 Ga. 639, 641-642 (5) (522 SE2d 225) (1999) (regarding relationship to defendant's family); *Barnes v. State*, 269 Ga. 345, 350 (6) (496 SE2d 674) (1998) (regarding perception that prospective juror behaved irrationally during voir dire); *Minor v. State*, 264 Ga. 195, 198 (5) (442 SE2d 754) (1994) (regarding perceived lack of connections to community); *White v. State*, 301 Ga. App. 837-838 (689 SE2d 120) (2010) (regarding proximity in age to defendant); *Askew v. State*, 254 Ga. App. 137, 143 (9) (564 SE2d 720) (2002) (regarding familiarity with one of the attorneys in the case); *Byron v. State*, 229 Ga. App. 795, 797-798 (5) (495 SE2d 123) (1997) (regarding familial or other relationships with individuals who had criminal histories); *Price v. State*, 223 Ga. App. 807, 809 (3) (478 SE2d 915) (1996) (regarding bad reputation of prospective juror's family).

[11] See *Turner v. State*, 267 Ga. 149, 152-153 (2) (476 SE2d 252) (1996); *Bell v. State*, 306 Ga. App. 853, 856 (703 SE2d 680) (2010); *Hood v. State*, 245 Ga. App. 391, 393 (4) (537 SE2d 788) (2000); *Byron*, supra at 798 (5). The cases cited by Washington in support of his contrary position are not binding precedent. See *Ridley v. State*, 235 Ga. App. 591 (510 SE2d 113) (1998) (physical precedent only); *Parker v. State*, 219 Ga. App. 361 (464 SE2d 910) (1995) (physical precedent only). See also Court of Appeals Rule 33 (a).

[12] *Lingo v. State*, 263 Ga. 664, 668-669 (1) (c) (437 SE2d 463) (1993) (emphasis omitted); see *Roberts*, supra.

revealed during that unrecorded bench conference regarding the prospective juror's criminal history in support of her position that the prospective juror was not similarly situated to prospective jurors who were struck. The trial judge also referred to the unrecorded bench conference in ruling on the *Batson* motion. Absent a transcript of that bench conference, we cannot conclude that the trial court clearly erred in finding that the white prospective juror with the criminal history was not similarly situated to the prospective jurors with criminal histories who were struck.[13]

In determining whether Washington demonstrated a discriminatory intent in making the strikes, it was for the trial court to "ultimately decide the credibility of [the state's] explanation."[14] Under these circumstances, we cannot conclude that the trial court clearly erred in denying Washington's *Batson* challenge.[15]

2. While examining Chitwood, the state questioned him about a statement he had written shortly before trial, and the court allowed him to read the statement to the jury. Washington contends that this constituted error. Although Washington's counsel initially objected on hearsay grounds, Chitwood's testimony about a statement he made himself did not constitute hearsay.[16] And Washington did not preserve any other claim of error based on the admission of the statement because, after a colloquy between the court and counsel for the state and for both defendants, his counsel acquiesced to the statement's admission and to Chitwood reading the statement to the jury. "[A] defendant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. The defendant must stand his or her ground. Acquiescence deprives the defendant of the right to complain further."[17]

3. Washington argues that the court should have merged his aggravated assault conviction into his robbery conviction. Whether offenses merge is a legal question, which we review de novo.[18]

Under OCGA § 16-1-7 (a) (1), "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if . . . [o]ne crime is included in the

---

[13] See *LeMon v. State*, 290 Ga. App. 527, 530 (1) (b) (660 SE2d 11) (2008).

[14] *Rose v. State*, 287 Ga. 238, 241 (2) (695 SE2d 261) (2010) (citation, punctuation and emphasis omitted).

[15] See *Jackson*, supra at 900 (2).

[16] See *Bowers v. State*, 241 Ga. App. 122, 124 (3) (526 SE2d 163) (1999) (where witness was the declarant, testifying to her own statements, the statements were not dependent upon the competency and veracity of other persons and thus were not hearsay).

[17] *Zipperer v. State*, 299 Ga. App. 792, 793 (1) (683 SE2d 865) (2009) (citation and punctuation omitted).

[18] *Louisyr v. State*, 307 Ga. App. 724, 730 (2) (706 SE2d 114) (2011).

other." OCGA § 16-1-6 (1) provides, in pertinent part, that a crime is "included in" the other where "[i]t is established by proof of the same or less than all the facts." Georgia has adopted the "required evidence" test for determining when convictions merge.[19] "[T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[20]

The offense of robbery required proof that property was taken from another, a fact not required to establish aggravated assault.[21] But the offense of aggravated assault in this case was established by proof of the same or less than all the facts required to establish the commission of the robbery. The indictment charged Washington with committing aggravated assault when he, "with intent to rob, ma[de] an assault upon the person of [the victim], by pointing a pistol at him, in violation of OCGA § 16-5-21 (a) (1)." A person commits assault "when he or she either . . . [a]ttempts to commit a violent injury to the person of another; or . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."[22] And, pertinently, a person commits robbery

> when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y use of force; . . . [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or another; or . . . [b]y sudden snatching.[23]

The assault forming the basis of the aggravated assault with intent to rob in this case — pointing a pistol — was "contained within" the element of robbery requiring Washington to have used force, intimidation, threat or coercion, or placed the employee in fear of immediate serious bodily injury.[24] It follows that the offense of aggravated assault merged into the offense of robbery.[25] We therefore vacate Washington's conviction and sentence for aggravated assault, and we

---

[19] *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006).

[20] Id. at 215 (punctuation and footnote omitted).

[21] See *Herrera v. State*, 306 Ga. App. 432, 435 (3) (702 SE2d 731) (2010); see also OCGA §§ 16-5-21 (a), 16-8-40 (a).

[22] OCGA § 16-5-20 (a).

[23] OCGA § 16-8-40 (a).

[24] See *Herrera*, supra.

[25] Id.

remand the case for resentencing.[26]

4. Washington contends that the court erred in instructing the jury that it could find him guilty of committing aggravated assault in a manner not alleged in the indictment. In light of our holding in Division 3, supra, this claim of error is moot.

## Case No. A11A0083

5. Hurst contends that the court erred in denying his *Batson* motion asserting the same arguments as Washington. We find no error in the trial court's ruling.[27]

6. Hurst argues that the evidence was insufficient to establish his identity as the passenger in Washington's vehicle. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[28] Evidence was presented that Chitwood identified Hurst as the vehicle passenger who negotiated a drug sale with him, held a gun to his head, demanded his money, and struggled with him in the back seat of the SUV (where the marijuana was later found) as that vehicle was driven away. This evidence was sufficient to authorize the jury to find that Hurst was the perpetrator of the alleged offenses.[29] Although Hurst does not challenge the sufficiency of the evidence as to any other specific element of the offenses for which he was convicted, we find that sufficient evidence was presented at trial as to the other required elements of the offenses, as well.[30]

7. For the reasons set forth in Division 3, supra, Hurst's conviction for aggravated assault must be vacated because it merged into his conviction for robbery, the sentence imposed thereon must be vacated, and the case must be remanded to the trial court for resentencing. Pursuant to the Supreme Court of Georgia's decision in *Mikell v. State*,[31] "[t]his disposition is required even though [Hurst] failed to raise the claim in the trial court, or to challenge the sentence for aggravated assault on appeal."[32] To the extent our

---

[26] Id. at 435-436 (3).

[27] See Division 1, supra.

[28] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[29] See *Craig v. State*, 276 Ga. App. 329-330 (1) (623 SE2d 518) (2005).

[30] See *Jackson v. Virginia*, supra.

[31] 286 Ga. 722 (690 SE2d 858) (2010).

[32] Id. at 725 (3) (citations omitted); see *Muckle v. State*, 307 Ga. App. 634, 639 (2), n. 3 (705 SE2d 721) (2011). See also *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002)

decisions in *Sanders v. State*[33] and *Lewis v. State*[34] conflict with *Mikell*, they are hereby overruled.

*Judgments affirmed in part and vacated in part, and cases remanded. Ellington, C. J., Smith, P. J., Barnes, P. J., Miller, P. J., and Andrews, Mikell, Adams, Doyle, Blackwell, Dillard and McFadden, JJ., concur.*

DECIDED JULY 13, 2011.

*Jimmonique R. S. Rodgers*, for appellant (case no. A11A0082).
*Teresa L. Smith*, for appellant (case no. A11A0083).
*W. Kendall Wynne, Jr.*, District Attorney, Layla H. Zon, Assistant District Attorney, for appellee.

---

("Since one may not be convicted legally of a crime which is included as a matter of law or fact in another crime for which the defendant stands convicted, the conviction and sentence for the included crime must be vacated by the appellate court, even if not enumerated as error.") (citations omitted), overruled in part on other grounds, *Williams v. State*, 287 Ga. 192, 193-194 (695 SE2d 244) (2010).

[33] 308 Ga. App. 303, 305-306 (2) (707 SE2d 538) (2011).

[34] 263 Ga. App. 98, 99 (1) (587 SE2d 245) (2003).