**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 26, 2014**

# In the Court of Appeals of Georgia

A13A2425. ANANABA v. THE STATE.

BARNES, Presiding Judge.

A jury found Chikezie Solomon Ananaba guilty of theft by receiving stolen property and possession of a vehicle with an altered Vehicle Identification Number (VIN). He argues on appeal that the trial court erred in denying his motion for new trial because the State's reasons for striking three African American venire members from the jury were not racially neutral and thus in violation of *Batson v. Kentucky*, 476 U.S. 79 (106 SCt 1712; 90 LE2d 69) (1986). He also argues that the trial court should have granted his motion for new trial because of a discovery violation. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict. *Ramey v. State*, 239 Ga. App. 620 (1) (521 SE2d 663) (1999). So viewed, the evidence at trial showed that a sergeant with the DeKalb County Police Department was investigating a large-scale investigation of "cloned" vehicles in 2009 and 2010.

A cloned car is a stolen car that appears to be legal because its two public VINs — on the dash next to the windshield and on the driver's door pillar — have been covered with the VIN of a car that is not stolen. In other words, someone creates stickers copying the VIN of a car registered elsewhere and pastes them over the visible VINs of a stolen car. The stolen car is then registered with the new VIN. A report on the history of the VIN would bring up two cars, and manufacturers never assign a VIN to more than one car. Manufacturers also place the VIN in a "confidential" location which can be ascertained by law enforcement, and newer cars embed the VIN in their computer systems.

The sergeant uncovered four cloned vehicles in 2009, and noticed that they had all been registered in Madison County, Alabama, by one clerk. In 2010 the sergeant obtained a copy of all the vehicle registrations done by that particular clerk that year, noted commonalities in some of the addresses used, and devised a list of cars he thought had been cloned. He then queried a database of DeKalb County automobile accident reports for tags that had been registered in Madison County. One of those cars was a Mercedes Benz CLS 550 registered to Ananaba, and after checking another database provided by insurance companies, the sergeant saw that the car had been in an accident and an insurance claim had been made. Through an insurance

agent, the sergeant located the car at a repair shop in Douglas County, where he met a Douglas County investigator. The law enforcement officers identified the car through its confidential VIN as one that had been stolen from North Carolina, and arrested Ananaba.

After being read his *Miranda* rights, Ananaba told the officers that he made arrangements at the Lucky Lounge nightclub with someone named "Kadafi" to buy the car for $20,000 cash. He paid the first $10,000 to someone named "Bishop" and the second $10,000 to a man who brought the car to the club, whose name he did not know. He did not have contact information for any of the men involved in the sale. Ananaba told the officers that Kadafi arranged for the car to be registered in Alabama because the ad valorem taxes were cheaper. A DeKalb County sergeant testified that Ananaba had insurance on his cousin's Escalade, which also turned out to be a cloned vehicle.

A sales manager for a Mercedes Benz dealership in North Carolina testified that the CLS 550 had been stolen from the dealership in September 2009, where it was on sale for $45,000. Two men took the car for a test drive and returned it, and the next morning the car was gone. A senior staff appraiser for the dealership's insurer testified that the insurer paid the dealer $35,240 for the car's loss. After the car was

3

recovered, the insurer sold it for its salvage value of $16,865, leaving a total loss to the insurer of $18,375.

1. Ananaba contends that, in violation of *Batson*, 476 U.S. 79, the manner in which the State exercised peremptory challenges against African American venire members gave rise to an inference of racial discrimination that was not successfully rebutted by the State. "We review the trial court's denial of the *Batson* motion under a clearly erroneous standard." *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996).

> Under *Batson*, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. The burden then shifts to the State to offer a race-neutral reason for the strike. Finally, the trial court must determine if the opponent of the strike has proven discriminatory intent. The trial court's ultimate finding in this regard is entitled to great deference on appeal.

(Citations omitted.) *O'Connell v. State*, ___ Ga. ___ (2) (Case No. A13A1327, decided January 21, 2014). "The first step is not particularly onerous; it requires only evidence sufficient for the trial judge to draw an inference of discrimination." *Stacey v. State*, 292 Ga. 838, 841 (3) (741 SE2d 881) (2013).

The trial transcript does not include the voir dire itself, but only the *Batson* objection, response, and ruling. Ananaba argued that of the seven strikes the State used, three of them were used to strike African Americans, which he contended was a disproportionate number considering that there were only eight African Americans on the venire panel. The record does not establish how many venire members were on the panel. Ananaba contended that, because he was also African American, he had presented a prima facie case of discrimination and the burden should shift to the State to provide a race-neutral explanation for the strikes. The State noted that it had not used all of its nine peremptory strikes and that two African Americans were seated on the jury.

The trial court found that Ananaba did not make out a prima facie case of discrimination, but allowed the State to articulate its reasons for striking the three African Americans anyway. The State responded that one venire member said that she had had a bad experience with a law enforcement officer after she had been in a car accident, and also had child care issues that afternoon. The second venire member also had had a "very bad experience" with law enforcement officers who had pulled him over when he was 20, and also had never registered a car. Finally, the third venire member had never taken a car for emissions testing, and also commented that she felt

5

she had been stereotyped in the past by police officers, who she believed often stereotype people based on race. The State continued, "Your Honor, this is a case in which all of our officers are Caucasian, and I am extremely worried that that bias would carry over into the trial."

Ananaba responded that other venire members who said they had never registered a car or handled the emissions testing were not struck by the State, and that the common thread among the three African American venire members the State struck was that they perceived having had problems with law enforcement because of their race. He argued that striking them because they said they had problems with law enforcement due to their race is not a race-neutral reason. The trial court found that the State gave adequate reasons to strike the jurors.

Assuming without deciding that Ananaba made the required prima facie showing of racial discrimination, the trial court's ruling was not clearly erroneous. Ananaba described only one of the three African American venire members struck by the State as having articulated her belief that she had had problems with law enforcement due to her race. The other two simply said they had had bad experiences with law enforcement. "A venire member's prior negative experience with law enforcement officers is a race-neutral reason supporting the exercise of a peremptory

challenge." *Guzman v. State*, 287 Ga. 759, 762 (2) (700 SE2d 340) (2010). Further, "[t]he State may reasonably base its use of a peremptory strike upon a prospective juror's apparent belief that, in general, law enforcement officers are racially motivated." *Quillian v. State*, 279 Ga. 698, 701 (3) (620 SE2d 376) (2005).

4. Ananaba contends that the trial court erred in denying his motion for a new trial because of the prosecution's failure to disclose the existence of certain documents. When the Douglas County investigator testified that he found an Alabama registration card in the Mercedes, Ananaba objected because the State did not provide him with photocopies of the registration or VIN sticker, which were not listed among the items seized from the car. The State responded that it had noted on the front of the discovery packet it sent Ananaba that "all physical evidence can be viewed by appointment," but Ananaba had never contacted the State to view any of it. The trial court overruled the objection and after the witness identified it, the registration card was admitted into evidence, as was the Alabama license tag, the fake VIN plate that had been placed over the VIN plate on the dashboard, the sticker from the door pillar, and an insurance card.

OCGA § 17-16-4 (a) (3) (A) generally requires the prosecuting attorney no later than ten days before trial to permit the defendant to inspect and copy any

tangible objects in the possession, custody, or control of the State that it plans to use as evidence or that belong to the defendant. Trial began on February 29, 2012, and the State's disclosure certificate, which was filed and served on Ananaba on February 13, 2012, listed numerous attached documents. It then said: "Items available for inspection by appointment: [X] Physical Evidence," followed by this notice in bold capital letters: "PLEASE CONTACT ME IMMEDIATELY SO THAT WE MAY ARRANGE A TIME FOR YOU TO INSPECT AND COPY OR PHOTOGRAPH THESE ITEMS."

Ananaba does not dispute having received the discovery packet with the notice quoted above. Rather, he argues that the investigator never made a report about having removed these items from the car, that he was "not aware that these items had been seized" from his car, and that therefore he had no opportunity to file a motion to suppress them. Ananaba has not shown that he might have succeeded with a motion to suppress, and we find no error in the trial court's overruling his objection to the admission of this physical evidence. "The plain language of the statute does not require the State to take the initiative and 'furnish' the defense with copies of [physical evidence]." *McSears v. State*, 226 Ga. App. 90, 91 (1) (485 SE2d 589)

8

(1997). The State fulfilled its obligation by making the evidence available to the defense to inspect and copy. Id.

*Judgment affirmed. Miller and Ray, JJ., concur.*