**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

July 22, 2021

# In the Court of Appeals of Georgia

A21A0848. HOLLOMAN v. THE STATE.

MERCIER, Judge.

Following a domestic dispute with his daughter, Davy Macio Holloman was found guilty of battery. The trial court denied Holloman's motion for new trial, and he now appeals, arguing that the evidence was insufficient and that he was denied his right to a fair trial because the State exercised its peremptory challenges to strike all persons of color from the jury. We affirm.

1. Holloman first argues that the evidence was insufficient to sustain his conviction.

> When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. [The appellate court] does not reweigh evidence or resolve conflicts in testimony; instead, evidence is

reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

*Harper v. State*, 298 Ga. 158 (780 SE2d 308) (2015) (citation and punctuation omitted).

The evidence presented at trial showed that on April 23, 2016, around 9:00 p.m., a 911 dispatcher received a call from Lolita Freeman, the mother of the 16-year-old victim. Freeman told the dispatcher that Holloman, the victim's father, had been drinking and that he "came in [her apartment] and jumped on [the victim]," and the two of them were fighting. Freeman asked the dispatcher to send the police to get Holloman, who did not live at the apartment, "out of [her] house" and stated that she should have never opened the door for him.

When officers arrived at the apartment, they encountered the victim, the victim's boyfriend, Freeman, and Holloman. Audio from the officers' body microphones was admitted at trial. In the audio, Freeman explained to the officers that an intoxicated Holloman came to her home and was upset that the victim had a boyfriend. She stated that when she let Holloman into her apartment, "he just went crazy" and hit the boyfriend, and then the victim and Holloman "just went in." The boyfriend told the officers that Holloman did not hit him but pushed his face, and that

2

when he moved back, Holloman fell. He stated that Holloman then tackled the victim and the two of them began fighting. The boyfriend stated further that he had to pull Holloman off of the victim. The victim told the officers that Holloman punched her in the face although she was unsure whether he did so intentionally. She explained that she became angry and pushed Holloman. Holloman then "came back at [her]" and grabbed her arms causing her to fall onto the floor and scrape her knee. A photo of the victim's scraped and bloody knee was admitted into evidence.

Holloman was charged with simple battery against the victim's boyfriend and family violence battery for "intentionally caus[ing] visible bodily harm to the person of [the victim] . . . by striking her and causing her to fall."

At trial, the officers testified that Freeman, the victim, and the victim's boyfriend described to them that Holloman either hit the victim, "jumped on" her, or attacked her. The victim explained that Holloman "was basically mad because [her] boyfriend was there and [Holloman] didn't like him." She denied that Holloman hit her, testifying that he "fell over because he was so drunk," causing her to fall and scrape her knee. The victim did not recall telling the officers that Holloman "struck [her] in the face." Similarly, Freeman testified that Holloman did not like the fact that the victim had a boyfriend. She explained she could not remember many details from

3

the incident, but that the victim scraped her knee while "beat[ing] up her dad." Like the victim, Freeman stated that she did not recall telling the officers that Holloman struck the victim with his hand. The victim's boyfriend testified that he did not remember many details of the incident but did recall that Holloman did not hit him. He also did not recall telling police that Holloman hit the victim.

Following the presentation of evidence, the jury found Holloman guilty of family violence battery against the victim, but not guilty of simple battery against the victim's boyfriend.

Although at trial the victim recanted her statement to police that Holloman hit her, explaining that he only fell into her, the jury heard her statements at the scene. The jury also heard the victim's boyfriend tell police that Holloman tackled the victim, and the victim's mother tell the 911 dispatcher that Holloman "jumped on [the victim]." "We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt." *Stone v. State*, 358 Ga. App. 98, 99 (853 SE2d 682) (2021) (citations and punctuation omitted). "This is true even in cases in which the victim recants her

4

previous accusation against the defendant." *Andrews v. State*, 275 Ga. App. 426, 429 (1) (620 SE2d 629) (2005).

The evidence here was sufficient to sustain the jury's verdict of guilty on the charge of family violence battery for intentionally causing visible bodily harm to the victim by striking her, causing her to fall. See OCGA § 16-5-23.1 (a) and (b) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another. . . . [T]he term 'visible bodily harm' means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts."); see also OCGA § 16-5-23.1 (f) (1) and (2) (family violence battery includes battery between parents and children); *Andrews*, supra (victim's prior inconsistent statements are admissible as substantive evidence for the jury to consider; "[A] jury is authorized to believe the victim's pre-trial statements rather than her in-court disavowal.") (citations and punctuation omitted).

2. Holloman asserts that he was denied the right to a fair trial by an impartial jury when the State exercised its peremptory challenges to strike all persons of color from the jury, "leaving him to be tried by an all-white jury."

*Batson* [*v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986)] established a three-step process for evaluating claims of racial discrimination in the use of peremptory strikes: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent.

*Suggs v. State*, 310 Ga. 762, 765 (3) (854 SE2d 674) (2021) (citation and punctuation omitted). "We review the denial of a *Batson* motion under a clearly erroneous standard." *Ford v. State*, 298 Ga. 560, 565 (6) (783 SE2d 906) (2016). And "[a] trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference." *Blackshear v. State*, 285 Ga. 619, 620 (3) (680 SE2d 850) (2009).

The court empaneled 18 prospective jurors so that Holloman could be tried by a jury of six. See OCGA § 15-12-125 (six-person jury for misdemeanor trials). Following voir dire, Holloman's counsel moved to strike the panel on the ground that there was only one person "of color who is on the panel, and the population in Barrow County would be 30 percent – roughly 30.5 percent African American to 59.7 percent

6

White American, and 3.8 percent Hispanic." The trial court denied defense counsel's motion.

The State then used its peremptory strikes to remove an African-American and a Hispanic panelist, and the parties do not dispute that this resulted in an all-Caucasian jury. Defense counsel objected to the State's use of its peremptory strikes to strike "all of the people of color," and the trial court asked the State to respond. The African-American panelist stated during voir dire that he had been arrested for drag racing in Florida, and without providing a reason, stated that he did not want to be on the jury and would not be a good juror. The prosecutor explained that he used a strike to remove this panelist because "he did not have any interest in this trial. He couldn't provide a real reason [for not wanting to be on the jury]." The State used a strike to remove the Hispanic panelist because he "did not answer any of [the other prosecutor's] questions. He sat mute through the entire process. [The prosecutor] was unable to develop a rapport with him . . . ." The trial court then overruled defense counsel's *Batson* objection.

Holloman again raised his *Batson* objection in his motion for new trial, but the court concluded that the ruling at trial was not clearly erroneous because there were race-neutral reasons for striking the two panelists and those reasons were "non-

discriminatory under the three-pronged inquiry required by *Batson*." The court noted that the trial judge "observed the demeanor of the prospective jurors and found that the defendant did not rebut the [S]tate's race neutral explanation for the exercise of strikes."[1]

On appeal, Holloman concedes that the State's exercise of its peremptory strikes in this case was race-neutral, but he asserts that "the problem is that the State's race-neutral reasons still deprived him of being tried by a jury of his peers that was representative of his community," denied him the constitutional right to trial by an impartial jury, and ultimately violated his substantive and procedural due process rights. Holloman asserts, inter alia, that *Batson* has failed to resolve the issue of unintentionally discriminatory peremptory strikes that eliminate all members of one race from serving on a jury, the State should encourage diversity of jurors, the prosecutor has a special ethical duty to guarantee inclusion in the jury box, and the

---

[1] Citing *Guzman v. State*, 287 Ga. 759 (700 SE2d 340) (2010), the court also ruled that it properly denied as untimely Holloman's motion to strike the entire jury panel. See id. at 763 (3) ("Any challenge to the composition of a panel of traverse jurors must be made when the panel is first put upon the accused, or there shall be a waiver of the right to contest its composition. . . . In the absence of a timely trial court directive to the contrary, a challenge to the traverse jury array is timely filed any time before the voir dire begins.") (citations and punctuation omitted). Holloman does not challenge this ruling on appeal.

court has a duty to guarantee that juries include minorities. He argues that the problem with *Baston* is that a defendant "must show that the State's action *intentionally* sought to remove jurors *because* of their race," and that the "law as it stands now permits the State to refute claims of racism with virtually any explanation. This creates a burden that is virtually impossible for a defendant to meet."

Holloman urges this Court to adopt "a reasonable update to *Batson*" to require a panel more representative of the community or if that is not possible, to prohibit the State from using all of its peremptory strikes on people of color, even if the reasons are race-neutral. While Holloman's arguments concerning the shortcomings of *Batson* are compelling, we have no power to "update" or amend United States Supreme Court authority, which we are bound to follow. See *Covin v. State*, 215 Ga. App. 3, 6 (449 SE2d 550) (1994) ("[I]rrespective of frustration, disagreement or the like, the commands of *Batson* are binding on the trial court as well as this [C]ourt."); see also *Clayton v. State*, 341 Ga. App. 193, 211 n.40 (797 SE2d 639) (2017) (physical precedent only) (Judge Self acknowledging in his dissent that "valid and reasonable criticisms of the efficacy of the *Batson* analysis abound, . . . . But despite these shortcomings, the *Batson* framework remains the law of the land, and this Court must faithfully follow the guidance of the United States Supreme Court and the Supreme

9

Court of Georgia with regard to its application and resist the urge to reformulate the standard despite the best of intentions. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ('The decisions of the Supreme Court shall bind all other courts as precedents.')").

Holloman concedes that the reasons offered by the State for its strikes were race-neutral, and we cannot say that the trial court's findings that they were race-neutral and that Holloman did not prove discriminatory intent were clearly erroneous. See *Toomer v. State*, 292 Ga. 49, 58 (2) (d) (734 SE2d 333) (2012) (prosecutor's explanation that potential juror was disinterested may not have been compelling, but the trial court's ultimate finding is entitled to great deference on appeal, and appellant did not demonstrate that it was clearly erroneous). Accordingly, this claim of error fails.

*Judgment affirmed. Dillard, P. J., and Colvin, J., concur*.